## CONTINENTAL TRUST COMPANY *v.* WESTERN MARYLAND RAILWAY COMPANY.

*Warehouse Receipts—Reissue by Warehouseman—Liability to Lenders on Receipts.*

Plaintiff trust company, holding negotiable warehouse receipts, issued by defendant company, as collateral for a loan to a firm, and having suffered loss by such firm's failure, after borrowing the receipts from the trust company, to return them or their equivalent, could not recover against defendant as for a conversion, merely because, some days before the deposit of the receipts with the trust company, on their surrender by the firm to defendant, with an order to load the wheat represented by the receipts on a certain vessel, defendant, instead of cancelling the receipts, had, at the firm's request, held them uncancelled, and loaned them on security to the firm, and after their withdrawal by the firm from the trust company, delivered grain in return for the receipts, which it then cancelled.

*Decided June 29th, 1926.*

Appeal from the Court of Common Pleas of Baltimore City (Ulman, J.).

Action by the Continental Trust Company against the Western Maryland Railway Company. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, PARKE, and WALSH, JJ.

*W. Irvine Cross* and *Edward Duffy,* for the appellant.

*Eugene S. Williams* and *M. K. Rothschild,* with whom was *George P. Bagby* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from a judgment recovered in the Court of Common Pleas of Baltimore City by the Western Maryland Railway Company, in an action of trover brought against it by the Continental Trust Company.

The defendant below, the appellee in this court, owns and operates grain elevators in the City of Baltimore. When wheat is received at its elevators, negotiable warehouse or elevator receipts are issued therefor, and when wheat is loaded out of the elevator, receipts for a like kind and quantity of grain are surrendered to it.

On May 2nd, 1924, the defendant delivered to the steamship "Capulin," on the order and for the account of H. C. Jones & Company, Incorporated, grain dealers at Baltimore, fifteen thousand bushels of garlicky wheat which the defendant had in storage for that company, and at such time the company surrendered receipts for a like kind and quantity of grain to the defendant, which H. C. Jones & Company asked the defendant to hold uncancelled, that the company might later borrow them upon depositing with the defendant receipts or bills of lading of an equal or greater value representing either the same or a different kind of grain. The defendant did as it was asked, and on May 25th, 1924, H. C. Jones & Company delivered to the defendant certain lake bills of lading for 25,000 bushels of Northern Manitoba wheat and borrowed said garlicky wheat receipts, it being understood that the defendant was to hold the said lake bills of lad-

ing as security for the return of the garlicky wheat receipts, or the delivery to the defendant of other receipts for a like kind and quantity of grain. As the aggregate amount of the lake bills of lading was 10,000 bushels more than the aggregate number of bushels represented by the garlicky wheat receipts, receipts representing 8,000 bushels of the Northern Manitoba wheat were returned to the company, leaving still a margin of 2,000 bushels of the Northern Manitoba wheat to secure the return of the receipts of 15,000 bushels of garlicky wheat or receipts for a like kind and quantity of grain. Three days later, on May 28th, H. C. Jones & Company sent the defendant a written order, signed by the company, directing the defendant to deliver 24,000 bushels of Northern Manitoba wheat to the steamship "City of Flint," and with the order and letter of transmittal, the company sent elevator receipts for approximately 15,000 bushels of garlicky wheat and other certificates for approximately 15,000 bushels of Northern Manitoba wheat. Over the body of the letter of transmittal were found the words "Steamship Schenectady," when in the body of the letter the direction was to deliver the wheat to the steamship "City of Flint." Upon discovery of this discrepancy the defendant was called over the 'phone and its attention directed thereto, and, as stated by the defendant, it was authorized to change the words "Steamship Schenectady," to "Steamship City of Flint," though such authorization was denied by Lawrence Jones, a representative of the company, but it was not denied that the company authorized the change to be made.

The defendant treated the receipts representing 15,000 bushels of garlicky wheat as a return of the uncancelled certificates representing the same number of bushels of the same kind of wheat loaned by it to H. C. Jones & Company on May 25th, and cancelled those receipts. The return of the receipts representing the 15,000 bushels of the garlicky wheat released the lake ladings representing 17,000 bushels of Northern Manitoba wheat, which had been held by the defendant as collateral against the return of the receipts representing the 15,000 bushels of garlicky wheat, and to-

gether with the certificates representing the 15,000 bushels of Northern Manitoba wheat, so delivered by H. C. Jones & Company to the defendant on May 28th, resulted in the defendants having 32,000 bushels of Northern Manitoba wheat subject to the order of H. C. Jones & Company.

On the last named date the defendant honored the company's order of that date and delivered 24,000 bushels of Northern Manitoba wheat to the steamship City of Flint. This left 8,000 bushels of Northern Manitoba wheat in the elevator belonging to the company. Of the 8,000 bushels, H. C. Jones & Company, on May 29th, ordered the defendant to deliver 7,954.30 bushels to the steamship Schenectady, which order was complied with and the wheat delivered. This left in the elevator of the defendant only 30 bushels belonging to the H. C. Jones & Company and this was applied to certain storage charges. Thereafter the defendant held no other elevator receipts or documents representing wheat or other grain belonging to H. C. Jones & Company.

It is disclosed by the record that on May 28th, 1924, H. C. Jones & Company was largely indebted to the Continental Trust Company. The amount so owing was a balance of a running account upon which there were loans made and credits entered from time to time. As collateral security for the payment of said indebtedness the trust company held thirteen warehouse receipts and one bill of lading for wheat issued by the defendant. The first of the twelve receipts represented 15,000 bushels of garlicky wheat, and the thirteenth receipt, 8,000 bushels of Manitoba wheat, while the bill of lading was for 7,000 bushels of Manitoba wheat, making a total of 15,000 bushels of garlicky wheat and 15,000 bushels of Manitoba wheat. These certificates were, on the said 28th day of May, 1924, withdrawn from the trust company by H. C. Jones & Company under what is called a trust receipt, which was as follows:

"Baltimore, May 28th, 1924.
"Hypothecation Receipt.
"Received of the Continental Trust Company the hypothecated securities hereon endorsed, and repre-

senting $17,042, loaned the undersigned on elevator receipts or bills of lading for grain by the said company.

"The said elevator receipts or bills of lading are surrendered and accepted upon the distinct understanding that the claim of the said company on the same as a security for the money advanced thereon is not to be impaired or diminished by this transaction; which is done solely for the purpose of enabling the undersigned to transfer the grain represented thereby to the Steamer Schenectady now in the port of Baltimore loading for .......... as soon as practical, as part of its cargo, and to draw their bills of exchange against the same.

"The undersigned hereby pledge themselves to deposit the bills of lading to be received from the said steamer, together with their bills of exchange to be negotiated on the same, in the said Company as soon as the said bills of lading shall have been received by them; or in lieu thereof to pay to the said Company the amount represented by the securities so surrendered, and pending the transfer of the grain herein contemplated and the payment therefore to the said Company, to keep the said grain insured for an amount equal to that due the Company thereon by policies payable in event of loss to the said Company.

"H. C. Jones & Co., Inc.,
"H. C. Jones,
            "Secretary-Treasurer."

In lieu of the warehouse receipts and lake bills of lading covered by the trust receipt and delivered to H. C. Jones & Company, by the plaintiff, or appellant, on May 26th, 1924, aggregating 30,005.24 (30,005 bushels and 24 pounds) bushels of wheat, H. C. Jones & Company only returned to the plaintiff receipts aggregating 3,728.73 bushels of wheat and the documents or bills of lading issued by the steamship Schenectady for 7,954.30 or a total of 11,683.03 bushels, leaving deficit of 18,319.21 bushels. It was to recover the

value of said 18,319.21 bushels of wheat that this action was brought.

The case was heard by the court sitting as a jury and a verdict was rendered for the defendant, upon which judgment was entered. In the trial of the case twenty exceptions were taken to the rulings of the court upon the evidence and one to the rulings on the prayers. At the conclusion of the case the court granted the three prayers of the defendant, each asking for a directed verdict for the defendaent upon the following grounds: First: That there was no evidence legally sufficient to entitle the plaintiff to recover; Second: That there was no evidence legally sufficient "to show that the defendant converted to its own use the wheat, or documents representing the same mentioned in the evidence." Third: That upon the uncontradicted evidence in the case "the defendant took the possession of, and title to, all of the documents involved in this case in good faith and for value."

That the receipts in question, which were delivered to H. C. Jones & Company by the defendant for wheat stored in the defendant's elevator, and which were thereafter hypothecated with and delivered to the plaintiff to secure a loan from it, and the possession thereof afterwards surrendered by it to H. C. Jones & Company upon receiving said trust receipt, were negotiable, is not disputed. Article 14-A, section 5, of Bagby's Code of 1924.

The alleged wrongful conduct of the defendant, which, as claimed by the plaintiff, resulted in the alleged illegal conversion of the wheat represented by said receipts, was the non-cancellation or re-issuance of said receipts by the defendant after they had been surrendered to it by H. C. Jones & Company, the holder of them, accompanied by an order to load the wheat represented by them upon the steamer "Capulin," and after they had been so loaded upon said ship. But can it be said that such act of the defendant resulted in an illegal conversion of the wheat or that it was the cause of the loss suffered by the plaintiff?

When the wheat was loaded upon the steamer the defendant was asked by H. C. Jones & Company not to cancel said

receipts, or if cancelled to reissue them if later requested by
H. C. Jones & Company. Wheat, when stored in the elevator,
is not kept separate from, but is mixed with, other wheat of
like quality, and when a receipt is given therefor it states that
the holder of such receipt has wheat in the elevator of the
quantity and quality named in the receipt.

In this case the defendant, on the 26th day of May, 1924,
issued to H. C. Jones & Company receipts amounting to
15,000 bushels of garlicky wheat, upon the latter turning over
to it, in lieu thereof, receipts for other wheat in the elevator
owned by it, of larger quantity and of greater value. This it
seems was in keeping with a prevailing custom among ele-
vator owners to loan or exchange wheat in such manner with
their customers, and if it were held that such custom was in
violation of Code, article 14-A, sections 51 and 52, which
question we do not pass upon, yet the negotiable receipts so
issued, when passing into the hands of the plaintiff, a pur-
chaser or holder for value in good faith, were good as against
the defendant issuing them. Section 11, article 14-A.

The non-cancellation or re-issuance of these receipts which,
as claimed by the plaintiff, passed into its possession as a
pledge or security for a loan made to H. C. Jones & Company,
did not affect the value or worth of such receipts, or the
liability of the defendant as to same. It, nevertheless, was
obliged to meet its obligations contained in them, and deliver
to the plaintiff the wheat mentioned in the receipts, or its
value, if called upon by the plaintiff. The plaintiff, however,
did not do this, but surrendered the receipts to H. C. Jones &
Company for the purpose of enabling the latter to load the
grain represented by them on steamer for shipment, "and to
draw their bills of exchange against the same." The delivery
of the receipts was made upon the pledge of H. C. Jones &
Company to deposit the bills of lading received from said
steamer "together with their bills of exchange to be negotiated
on the same, in the said company (trust company) as soon
as the said bills of lading shall have been received by them;
or in lieu thereof to pay to the said company the amount rep-
resented by the security so surrendered."

It will thus be seen that H. C. Jones & Company was to deliver to the plaintiff the bills of lading or, if not the bills of lading, to pay to the trust company the amount represented by the securities so surrendered, and it was upon the pledge of H. C. Jones & Company to either deliver to it such bills of lading or to pay to it said amount of money that they surrendered to H. C. Jones & Company the securities it held for its loan made to it. It was not expecting a return of the receipts, for these were to be surrendered to the defendant for the loading of the grain upon the ship. The trust company held the receipts in question, if at all, for not more than three days at most, as it was on the 25th that they were delivered by the defendant to H. C. Jones & Company, and it was on the 28th that the plaintiff returned them to H. C. Jones & Company, and on the last named date H. C. Jones & Company gave its written order to the defendant to load the Manitoba wheat, the receipts for which it had previously deposited with the defendant to secure the return of the garlicky wheat receipts. Upon the receipt of that order the Manitoba wheat was loaded upon the ship, as directed, and the garlicky wheat receipts were cancelled. What became of the bills of lading for the Manitoba wheat so shipped is not disclosed by the record, but evidently they were not delivered to the plaintiff in lieu of the receipts surrendered by the plaintiff under the trust receipt.

It is claimed by the defendant, and not denied by the plaintiff, that it had no knowledge whatever that said receipts were ever held by the trust company as security for said loan or otherwise, and that they knew nothing of the trust receipts or its terms.

The loss sustained by the plaintiff cannot, we think, be properly ascribed to any wrongful act of the defendant. The return of receipts for 15,000 bushels of garlicky wheat to the defendant on the 28th day of May released a greater quantity of Manitoba wheat of greater value belonging to H. C. Jones & Company, thereby enabling it to fully carry out its trust agreement with the plaintiff had it seen fit to do so. It was its breach of said agreement and not the act of the defendant

in not cancelling, or in re-issuing, the garlicky wheat receipts that caused the loss to the plaintiff. There was, in our opinion, no wrongful conversion entitling the plaintiff to recover therefor, and the case was properly withdrawn from the consideration of the jury.

Proof of the custom referred to was not, we think, essential to the decision of this case, but if it were so considered, we find no reversible error in the admission of the evidence in support of it, and the same may be said of the evidence admitted under the other exceptions.

As we find no errors in the rulings of the court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*